IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID WHITLOW, | ) |
| Plaintiff, | ) |
| v. | ) CASE NO.: 2:21-cv-632-ECM |
| | ) (WO) |
| KENDRA FOWLER, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Before the Court is the wreckage of a car sale gone awry. Two summers ago, Plaintiff David Whitlow ("Whitlow") agreed to sell his car to Defendant Kendra Fowler ("Fowler"), an old college acquaintance. After Fowler paid for the vehicle, Whitlow alleges, she reported the transactions fraudulent and had them reversed. Whitlow then filed suit against Fowler, Square, Inc.,[1] and Customers Bank in the Circuit Court of Montgomery County, Alabama. Customers Bank subsequently removed the case here, and Whitlow now seeks a remand. Because the Court finds that Whitlow does not raise any substantial issue of federal law and that the parties are not completely diverse, Whitlow's motion to remand is due to be GRANTED.

---

[1] Square, Inc. is now known as Block, Inc. For simplicity, the Court refers to the company as Square. The parties also move jointly to dismiss Square from the suit. (*See* Doc. 10). Because the Court lacks jurisdiction and thus remands the case to state court, it is unable to rule on that motion.

## II. BACKGROUND

In July 2020, Whitlow (of Alabama) agreed to sell his 2012 Dodge Challenger to Fowler (also of Alabama) for $11,000. However, Whitlow's outstanding loan balance on the car, owed to a company called Credit Acceptance, stood at $12,000. To clear the loan, Fowler agreed to pay $12,000 to Credit Acceptance and then accept $1,000 in cash from Whitlow, bringing the transaction total to the agreed-upon $11,000. The two executed a Bill of Sale, and then Fowler paid off the $12,000 balance online using two debit cards. The first $10,000 was paid in four transactions of $2,500 (Credit Acceptance's transaction limit) on Fowler's own debit card.[2] The remaining $2,000 was paid using the debit card of Fowler's friend. A few weeks later, Credit Acceptance confirmed to Whitlow that the loan was paid off and sent him the car's title, which he then transferred to Fowler.

Whitlow thought the transaction at an end. Instead, Credit Acceptance notified Whitlow that all four $2,500 payments (made on Fowler's card) had been reported fraudulent and reversed by Customers Bank, and that accordingly, his loan account had been reopened.[3] Whitlow reached out to Fowler to fix the situation, but despite repeated attempts, received neither explanation nor resolution. Fowler denied reporting the transactions as fraudulent and did not repay to Whitlow or Credit Acceptance the money reversed back to her card. All the while, thanks to fees and interest, Whitlow's amount

---

[2] The debit card was issued by Defendant Customers Bank.

[3] Whitlow also alleges that a $5,417.02 finance charge and a $1,960.24 transaction had also been reported fraudulent and reversed. It is unclear what these charges were or who made them.

owed to Credit Acceptance ballooned to more than $20,000, and Credit Acceptance threatened to repossess the vehicle.[4]

With his attempts at amicable resolution unsuccessful, Whitlow filed suit in the Circuit Court of Montgomery County, Alabama, asserting claims of breach of contract and fraudulent misrepresentation against Fowler, and negligence and wantonness against Customers Bank and Square. After Customers Bank and Square had been served (but before Fowler had been), Customers removed the case to this Court with Square's consent. Whitlow now moves to remand, arguing that since he asserts only state-law claims, and since he and Fowler are both citizens of Alabama, no federal jurisdiction exists.[5]

### III. ANALYSIS

Though a plaintiff is the master of his claim, his power is not plenary. Instead, a defendant may remove from state court to federal court any "action[] that originally could have been filed" in that federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441). Federal courts, however, are courts of limited jurisdiction, possessing only the power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Courts should presume that a case lies outside this limited jurisdiction—the burden of establishing the contrary lies with

---

[4] It is also unclear from whom it would do so. Whitlow does not specify whether Fowler has returned the vehicle or signed back over its title, but he does not bring any property-centric cause of action (like conversion) or seek any remedy effectuating the car's return (or return of the $1,000 in cash he paid to Fowler).

[5] Whitlow also argues that since Customers and Square had notice that Fowler was also part of the suit, their failure to demonstrate due diligence in obtaining her consent (even though she had not yet been served) makes the removal deficient. Because the Court agrees with Whitlow's federal question arguments, it does not address this separate ground for remand.

the party asserting jurisdiction. *Id.* This burden is "a heavy one." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  When a plaintiff properly moves to remand a removed case, any questions or doubts as to jurisdiction are to be resolved in favor of returning the matter to state court. *Id.*

"Where, as here, there is not complete diversity of citizenship, the defendant must show that federal question jurisdiction is present." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (citing 28 U.S.C. § 1441(b)).  Federal question jurisdiction grants the Court power over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331.  Generally, "[w]hether a claim 'arises under' federal law 'is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Dunlap*, 381 F.3d at 1290 (quoting *Caterpillar*, 482 U.S. at 392).  Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law, even where a federal claim is also available." *Id.* (quotations and citation omitted).  However, even if he pled only state-law claims, a plaintiff "may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." *Id.* (citation omitted).

Customers Bank argues that the Court now faces the former:  that Whitlow's negligence claim, though ostensibly relying only upon state law, nevertheless necessarily raises a substantial question of federal law and empowers this Court with jurisdiction.  For that to be the case, a federal question must be "(1) necessarily raised [by the state law

claim], (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quotations and citation omitted).

Customers Bank believes just such an interest exists here. It asserts that since Whitlow's negligence claim requires a duty owed him by Customers Bank, *see Yamaha Motor Co. v. Thornton*, 579 So. 2d 619, 623 (Ala. 1991) (defining the elements of negligence claims), and because it believes the only duty that Whitlow could assert arises from the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, ("EFTA"), the Court must necessarily answer *some* question—ambiguity addressed below—for Whitlow's claims to succeed.[6] Whitlow disagrees. He argues that *state* law imposed a duty on Customers Bank to not undertake actions that would harm him, and that his negligence claim does not depend on whether Customers Bank violated the EFTA.[7]

---

[6] It then argues that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Whitlow's other state law claims (of wantonness, breach of contract, and fraudulent misrepresentation). The Court does not address this argument since it finds no federal question has been raised.

[7] The parties draw most of their arguments from Eleventh Circuit cases decided pre-*Gunn* and *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), in which the Supreme Court organized and clarified its substantial federal question removal doctrine. The tests the parties cite, while not clearly abrogated or otherwise overturned, fail to capture all the considerations the Court must review. Customers Bank does not argue that any EFTA question the Court needs to answer "is significant to the federal system as a whole," *Gunn*, 568 U.S. at 264, as required by the proper inquiry. Nor does Customers Bank address whether the issue is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. That alone is reason to remand, for Customers

First, some context. The EFTA "provide[s] a basic framework [to] establish[] the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Its primary objective is "the provision of individual consumer rights." *Id.* To that end, the EFTA requires that financial institutions, upon notice from a consumer who believes her account contains an error, investigate that alleged error within ten business days. *Id.* § 1693f(a).[8] If the institution agrees that an error occurred, it must correct the error within one business day. *Id.* § 1693f(b). Customers Bank asserts that the EFTA imposes the only obligations Customers Bank had concerning Fowler's debit transactions.

Maybe so. But Customers Bank does not explain how that obligation gives rise to a substantial, disputed federal question here—it never makes clear what it thinks the disputed question *is*. It does not argue that the Court must determine whether it violated the EFTA in how it investigated Fowler's dispute for Whitlow's claims to survive,[9] or that the Court must determine whether the EFTA requires, in investigating disputed transactions, some consideration of how a reversal under § 1693f(b) would affect third parties such that it imposed a duty here. It does not point to *any* question the Court needs

---

Bank has failed to satisfy its burden to demonstrate that Whitlow's claims satisfy all four factors from *Gunn* and *Grable*.

[8] Of relevance here, acts constituting "errors" include unauthorized electronic fund transfers or incorrect transfers from or to the complaining consumer's account. 15 U.S.C. § 1693f(f)(1)-(2).

[9] Even if Whitlow *did* need to show that Customers Bank violated the EFTA to succeed on his negligence claim, that alone would not be sufficient to empower this Court with jurisdiction. *See Dunlap*, 381 F.3d at 1292 ("[I]t is now well established that federal jurisdiction is not created by the mere fact that proof of violation of a federal statute is an element of a plaintiff's state-law cause of action.").

to answer here with regards to the EFTA—it raises no substantial issue of its scope, its applicability, or its construction.  Nor does it argue that the EFTA preempts any possible duty under state law with regards to electronic transactions, such that only the EFTA merits discussion.[10]  It points to no *question* that is unanswered and disputed.

And no matter which of those questions Customers Bank thinks the Court needs to answer, it is not clear that Whitlow takes the alternative position such that the question is disputed.  Whitlow makes clear that he does not believe the EFTA hoists a duty to him upon Customers Bank, and that he does not believe that Customers Bank violated the EFTA's strictures.  Whitlow focuses entirely on a duty owed him under Alabama state law.

Indeed, Customers Bank only reaches discussion of federal law by putting the cart before the horse and asserting as fact another of its arguments:  that Whitlow is wrong, and state law imposes no duty on Customers Bank.  The Court has made no such determination, and Whitlow implores the Court not to do so.  Whitlow argues that Alabama state law imposes a duty on Customers Bank to protect non-customers from foreseeable harm. (*See* Doc. 17 at 5–7 (discussing *Patrick v. Union State Bank*, 681 So. 2d 1364, 1369 (Ala. 1996),

---

[10] Such an argument would be wrong.  By its own terms, the EFTA

> does not annul, alter, or affect the laws of any State relating to electronic fund transfers, . . . except to the extent that those laws are inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. A State law is not inconsistent with [the EFTA] if the protection such law affords any consumer is greater than the protection afforded by [the EFTA].

15 U.S.C. § 1693q.  Thus, if Alabama state law imposed an *additional* duty on financial institutions to investigate transactions purportedly fraudulent with an eye towards foreseeable harm to third parties, a duty Customers Bank seems to think is not imposed by the EFTA itself, that additional duty would not conflict with the EFTA and would not be altered by it.

7

and other cases)). Obviously, whether Alabama law imposes a duty on banks to investigate transactions reported fraudulent with a consideration of how reversal could affect a non-customer is a question of Alabama law. Just because Customers Bank *disagrees* with whether Whitlow's asserted state-law duty exists does not mean that Whitlow has not attempted to locate one, or that his complaint *necessarily* raises a substantial, disputed question of federal law. If Whitlow is correct and a duty to him does emerge from state law, no discussion of the EFTA is necessary.

All told, Whitlow's negligence claim does not necessarily give rise to a substantial, disputed federal question that can be decided by this Court without disrupting the federal-state balance approved by Congress. Thus, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

## V. CONCLUSION

Because the Court finds that Whitlow's complaint does not raise any substantial questions of federal law, but rather relies entirely on state law, federal question jurisdiction does not exist here. And, because the parties are not completely diverse, diversity jurisdiction does not exist either. Thus, this Court lacks subject matter jurisdiction, and a remand is required. Therefore, it is

ORDERED that the Plaintiff's Motion to Remand (doc. 13) is GRANTED and this case and all pending motions are REMANDED to the Circuit Court of Montgomery County, Alabama.

The Clerk of Court is DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Montgomery County, Alabama.

DONE this 3rd day of May, 2022.

                                          /s/ Emily C. Marks  
                                  EMILY C. MARKS  
                                  CHIEF UNITED STATES DISTRICT JUDGE